25CA1109 Peo in Interest of JJL 12-31-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1109
City and County of Denver Juvenile Court No. 23JV30285
Honorable Elizabeth McCarthy, Judge

The People of the State of Colorado,

Appellee,

In the Interest of J.J.L., a Child,

and Concerning V.A.L. a/k/a V.A.B.,

Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE SCHOCK
Harris and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 31, 2025

Miko Brown, City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Michael Kovaka, Office of Respondent Parents' Counsel, Littleton, Colorado, for Appellant

¶ 1     V.A.L. (mother) appeals the judgment terminating her parent-child relationship with J.J.L. (the child). She contends that the juvenile court erred by determining that she was not fit and not likely to become fit within a reasonable period of time. We affirm.

## I.    Background

¶ 2     The Denver Department of Human Services (the Department) filed a petition in dependency and neglect based on concerns about domestic violence and mother's substance dependence.

¶ 3     The juvenile court adjudicated the child dependent or neglected and entered a treatment plan for both parents. About a year later, the Department moved to terminate both parents' parental rights. But because mother was making progress toward establishing sobriety, the Department withdrew the motion.

¶ 4     A month later, the child's guardian ad litem moved to terminate mother's (and father's) parental rights. After a four-day hearing, the juvenile court terminated both parents' parental rights, concluding, as relevant here, that mother was not fit to parent the child and was not likely to become fit within a reasonable time.

## II.     Fitness

¶ 5      Mother contends that the juvenile court erred by finding that she was an unfit parent and was unlikely to become a fit parent within a reasonable period of time.  We disagree.

### A.     Applicable Law and Standard of Review

¶ 6      To terminate a parent-child legal relationship, the juvenile court must find by clear and convincing evidence that (1) the child has been adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2025.

¶ 7      A parent is unfit if their conduct or condition renders them unable or unwilling to give their child reasonable parental care. *People in Interest of D.P.,* 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental needs and conditions. *People in Interest of A.J.,* 143 P.3d 1143, 1152 (Colo. App. 2006).

¶ 8　　When deciding whether a parent's conduct or condition is likely to change within a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition.  *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24.  What constitutes a reasonable time is fact-specific and must be determined by considering the physical, mental, and emotional conditions and needs of the child.  *Id.* at ¶ 25.

¶ 9　　But a "reasonable time" is not an indefinite time.  *Id.*  And even when a parent has made progress on a treatment plan, the court is not required to give the parent additional time to become fit.  *See id.* at ¶¶ 24-25.  In addition, when, as in this case, the child is under six years old when the petition is filed, the action is subject to the expedited permanency planning provisions and the court must place the children in a permanent home as expeditiously as possible.  *See id.* at ¶ 25; §§ 19-1-102(1.6), 19-1-123, C.R.S. 2025.

¶ 10　　Whether the juvenile court properly terminated parental rights is a mixed question of fact and law.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  We review the court's factual findings for

3

clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

## B. Analysis

¶ 11 The juvenile court found that mother was unfit, in that she was "unable or unwilling to offer nurturing and safe parenting adequate to meet [the child's] needs." In so finding, the court recognized that, at times during the two-year case, mother had shown sobriety and "worked diligently" on components of her treatment plan. But at the time of the termination hearing, mother was no longer in compliance with the objectives of the plan.

¶ 12 The court found that mother had relapsed in the months before the termination hearing, twice testing positive for ingestion of fentanyl and testing positive in a fingernail test for environmental exposure to methamphetamine, methadone, and fentanyl. The court also found that mother's behaviors during recent parenting time sessions with the child were indicative of substance abuse and that mother's claims of sobriety despite the positive tests were not credible. Although the court noted that a relapse is not itself a complete failure of the treatment plan, mother's "denial or minimization . . . and really the lack of curiosity or concern for" the

possible impacts of an accidental exposure to fentanyl on the child left the court with no path forward for mother's rehabilitation.

¶ 13 The record supports these findings. Two experts in forensic toxicology testified that the confirmation testing performed on mother's urinalysis and fingernail samples eliminated the possibility of false positives. The experts testified that (1) fentanyl was definitively present in two of mother's urinalysis samples due to ingestion; and (2) methamphetamine, methadone, and fentanyl were present in mother's fingernails due to mother being "consistently in an environment where drugs are being used or manufactured." When mother's counsel suggested that mother may have been exposed to substances at substance testing facilities or through her work at a pharmacy, both experts testified that positive results due to these circumstances were "highly unlikely."

¶ 14 Moreover, several family time supervisors testified that they were concerned that mother was under the influence of substances during family time with the child. One supervisor described mother alternating between rapidly speaking and falling asleep "almost mid-sentence" in a visit the week before the termination hearing. Another described mother's behavior at a family time session a few

days later, where mother was irritable and cursing, and "appeared not with it . . . slurring her words and . . . somewhat unintelligible." Although mother's demeanor improved at times during the visit, she twice went to the restroom and returned "slurring and becoming sort of unintelligible again." A third family time supervisor described mother berating the child a few weeks before the hearing. And the caseworker testified that, after the positive urinalysis test, mother became more confrontational and argumentative — behaviors she historically displayed during times of relapse.

¶ 15 In addition to the recent relapse and concerns with family time, the caseworker testified that mother was not in compliance with other requirements of her treatment plan. For example, the caseworker opined that mother had not demonstrated protective capabilities or maintained boundaries with father, as required by the domestic violence objective. Indeed, mother had recently denied ever having been involved in domestic violence, notwithstanding her earlier disclosures to the contrary. The caseworker also testified that mother was not participating in the child's speech language therapy, as required to meet the child's needs, and that mother was

not successful with her mental health objective because she had not shown behavioral changes or accepted accountability.

¶ 16     The record also supports the juvenile court's finding that mother conduct or condition was unlikely to change within a reasonable time.  The court found that despite making "a lot of progress," mother "is still not a safe and sober parent."  It found that mother's "hostility and rejection of the positive tests and her unwillingness to acknowledge the relapse and get into a higher level of treatment" made it unlikely that mother would become fit within a reasonable period of time.  And it found that although mother had successfully demonstrated sobriety at times, there was "a pattern of relapse," and the child "cannot wait for another six months or another year or another two years to have a safe and sober parent."

¶ 17     Again, these findings are supported by the record.  Mother's providers and the caseworker agreed that, at times, mother engaged in treatment and demonstrated periods of sobriety and positive interactions with the child.  But the recent positive substance tests and mother's behavior since those tests presented a significant barrier.  Mother's therapist testified that she gave mother referrals for detox and inpatient substance dependence treatment, but

mother declined the referrals and said she would not attend inpatient treatment. And when the caseworker tried to talk to mother about how the exposure occurred or the reasons for her relapse, mother refused. Mother also refused to provide further substance testing to reestablish sobriety. The caseworker testified that, although relapse can be a regular part of substance dependence treatment, mother showed no accountability for the positive tests and was adamant that she had not relapsed.

¶ 18 The caseworker explained that mother's recent demeanor and behavior were consistent with the pattern she had displayed throughout the case — with a period of strong engagement followed by a period of relapse and disengagement. Two years after the petition was filed, mother remained trapped in that same pattern.

¶ 19 We therefore conclude that the record supports the juvenile court's factual findings and its conclusion that mother was unfit and unlikely to become fit within a reasonable period of time.

### III. Disposition

¶ 20 The judgment is affirmed.

JUDGE HARRIS and JUDGE JOHNSON concur.